# EXHIBIT A

PROB 72
(Rev. 02/16)

# UNITED STATES DISTRICT COURT
for the
District of Columbia

## DECLARATION OF VICTIM LOSSES

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Case No.   1:17CR00111-001 |
| | ) | |
| Alexander Gulino | ) | |
| | ) | |

I, Neiman Marcus, residing at 1201 Elm St, Suite 2906, Dallas TX 75270, in the city (or county) of Dallas, Tx, in the state of Texas, am a victim in the above referenced case, and I believe that I am entitled to restitution in the total amount of $298,142.38.

My specific losses as a result of this offense are summarized as follows: *(attach additional pages if needed)*
Over the course of a three year period we identified fictitious returns that Mr. Gulino had processed using legitimate customer sale information to convert into cash returns for his own personal gain. In total we identified 522 transactions over the three year period that were structured in a way to conceal them from suspicion. Mr Gulino used his position of trust and access to investigative systems to identify legitimate customer transactions that were older and originally rung by associates that were at the present time terminated. This allowed him to ring these fictitious returns without worry that customers would show up to return the merchandise and that no associates would ask questions.

☐ I have been compensated by insurance or another source with respect to all or a portion of my losses in the amount of $ N/A. The name and address of my insurance company and the claim number for this loss are as follows:
N/A

As a result of this offense, I have: *(check all that apply)*
☐ become insolvent;
☐ filed for bankruptcy under the Bankruptcy Code (title 11, United States Code);
☐ suffered substantial loss of a retirement, education, or other savings or investment fund;
☐ made substantial changes to my employment (such a postponing retirement plans);
☐ made substantial changes to my living arrangements (such as relocating to a less expensive home);
☐ suffered substantial harm to my ability to obtain credit.

I declare, under penalty of perjury, that the foregoing is true and correct.

Date executed:  10-5-2018                    *William Avett*
                                                                    *(Signature)*

## VICTIM IMPACT STATEMENT for Alexander Gulino    1:17CR00111-001

I have been in the Loss Prevention field for over 25 years and have seen many things over that time. I have been involved in countless investigations related to Loss Prevention professionals engaging in dishonest activity. With each and every one there has been a feeling of betrayal as they were trusted to watch the store and investigate dishonesty. Over the years I developed the ability to separate myself from taking anything personally as most people in my position do. In fact I felt that I had gotten immune to the point that I wouldn't take any situation personal ever again. This situation involving Sandy has changed that perception. Although Neiman Marcus may be viewed as a big business, we are, and always have had a small community feel. Within the Loss Prevention organization I would say we are a small family. When I started with Neiman Marcus in the Tyson's Corner location, I was sent to Sandy to train. I looked up to him as a mentor. He was one of our most tenured managers. He was looked up to by his peers, the store team, and by local law enforcement. As I moved around and ultimately upward in the company I always kept in touch with Sandy. We would talk about our kids, our personal lives, life in general. When I became the regional over Sandy' store I was thrilled that he was there. He was a trusted, tenured manager whom I could rely upon. I often bounced ideas off of him and respected his opinion. I trusted him so much that I relied upon him to help with investigations related to Loss Prevention personnel at local stores when they came up. He helped with the investigations, surveillance, interviews, and with local law enforcement. He was a staple in our Loss Prevention department. When we came across the pattern of dishonesty that Sandy had engaged in I was stunned. The total frequency and dollar amount of the transactions were stunning, but the lengths and manipulation that went into ringing them was something we had never seen. Sandy used his position and access to investigative systems and carried out this manipulation for years undetected. He purposely manipulated the camera system to avoid detection and used his access to our confidential investigative systems to identify transactions for the purposes of ringing fictitious returns that would not cause suspicion. He knew how we investigated transactions using these systems, how the store associates and management dealt with returns, then leveraged his position supervising the Customer Service department to carry out these crimes. As we uncovered this activity it became clear that we would have a great deal of difficultly investigating this fully. Based on Sandy's access level and knowledge we had to go to great lengths and expense to conduct this investigation. This involved making changes to the register system, camera system, alarm system, and the physical security of the building. It required us to travel from Dallas to install covert systems secretly overnight which was not any easy task to conceal from the store. It required support from many people corporately to coordinate and execute. Upon Sandy being arrested and terminated it required us to change the building locks, alarm access, pass-codes, and stockroom and safe combinations. It took months after we confronted Sandy to put all of this information together for prosecution. We had to use

Any data typed beyond the space provided will not print. If more space is required, click the Add Page button.

| William Atwell | *[signature]* | 10-8-18 |
|---|---|---|
| (PRINT NAME) | (SIGNATURE) | (DATE) |

## VICTIM IMPACT STATEMENT for Alexander Gulino    1:17CR00111-001

considerable resources and time in order to gather the information that we were being asked to provide. Because of it's complexity and scope, the investigation into Sandy has added over $10,000 to the company's financial loss. Losses notwithstanding, to this day we continue to deal with the fall-out that occurs when someone in his position so badly violates everything that they were trusted to do. When someone in Sandy's position violates that trust it instantly erases the departments credibility. It has taken years to try and gain that confidence back. In the over 25 years that I have been involved in Loss Prevention I have never seen someone in this trusted of a position cause so much damage through their actions. Actions which not only caused serious financial liability, but caused the erosion of moral and trust like I could never have imagined.

Any data typed beyond the space provided will not print. If more space is required, click the Add Page button.

William Atwell                    *[signature: William Atwell]*                    10-8-18
(PRINT NAME)                    (SIGNATURE)                    (DATE)